**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**


CIVIL ACTION NO. 11-364-JBC

JASON RHORER,                                                          PLAINTIFF,

V.                          **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

**\* \* \* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on Jason Rhorer's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 13, and deny Rhorer's motion, R. 12, because substantial evidence supports the administrative decision.

At the date of his applications for DIB and SSI, Rhorer was a twenty-five-year-old male. AR 96, 2039, 2428. He attended school until the eighth grade. AR 2432. Prior to the alleged disability, he worked as a cleaner, stocker, and cashier. AR 35, 2476. Rhorer alleged disability beginning September 14, 2004, due to blindness in the left eye and pain in his legs and back. AR 96, 127, 2039. He filed his claims for DIB and SSI on December 9, 2005, but they were denied initially and on reconsideration. AR 51-52, 96, 2039, 2043-44. After a hearing on March 7, 2007, Administrative Law Judge ("ALJ") Don C. Paris issued a decision denying Rhorer DIB and SSI. AR 56-65. This denial decision was reversed by the

Appeals Council on December 12, 2008, for further consideration of the opinion of

Dr. Timothy May, a treating source.  AR 67-68.  After an additional hearing on

January 21, 2010, the ALJ again concluded that Rhorer was not disabled under

Section 1614(a)(3)(A) of the Social Security Act.  AR 36.

Under the traditional five-step analysis, 20 CFR § 404.1520, the ALJ

determined that Rhorer has not engaged in substantial gainful activity since the

alleged disability onset date, AR 27; that he has severe impairments including

borderline intellectual functioning, an adjustment disorder with mixed anxiety and

depressive traits, chronic back pain without radiculopathy, patellofemoral syndrome

in the right knee, left-eye blindness, and morbid obesity, AR 28; that his

impairments, either alone or in combination, did not meet or equal a listing section

in the Listing of Impairments, *Id.*; that he had the residual functional capacity

("RFC") to perform light-level work, restricted from a full range by an inability to

more than frequently push or pull, an inability to use foot controls with the right

lower extremity, an inability to more than occasionally balance, stoop, kneel,

crouch and climb stairs or ramps, an inability ever to crawl and climb ladders, ropes

or scaffolds, an inability to perform work requiring depth perception, a need to

avoid exposure to full-body vibration and hazards, and a limitation to simple,

repetitive work activities in a low-stress, object-focused work environment in which

contact with coworkers and supervisors was casual and infrequent in a non-public

work setting and in which changes in work activities were routine and gradual, AR

30-31; and that based on his RFC, he could still perform the past work of cleaner

2

and stocker, AR 35.  Based on these findings, the ALJ denied Rhorer's DIB and SSI claims on April 23, 2010, and Rhorer commenced this action. AR 35-36.

Rhorer challenges the ALJ's ruling on the following grounds: (1) the ALJ failed to properly evaluate the psychological assessments of the treating and examining sources, including Dr. May, psychologists Timothy Carbary, Jennifer Wilkes-Deaton and Christi Hundley, and nurse-practitioner Connie McNeeley; and (2) the ALJ failed to properly assess Rhorer's credibility.  On neither ground, however, did the ALJ err.

The ALJ properly rejected the opinion of Dr. May, the treating source at Bluegrass Comprehensive Care.  In August 2006 Dr. May assessed Rhorer as possessing several limitations.  Dr. May found extreme limitations, defined as "no useful ability to function," in such areas as understanding, remembering, and carrying out detailed instructions, and making judgments on simple work-related decisions.  AR 587.  He also reported marked limitations in Rhorer, defined as a "severely limited but not precluded" ability to function, in such areas as understanding, remembering, and carrying out simple instructions, interacting appropriately with the public and supervisors, and responding appropriately to work pressures in a usual work setting.  AR 587-588.  When these limitations were presented to Vocational Expert Joyce Forrest, she indicated that no work could be performed under these scenarios.  AR 2481-2482.

Rhorer argues that Dr. May's treating source opinion, which consisted of more severe mental restrictions than those found by the ALJ, was entitled to

3

superior weight.  *Warner v. Commissioner of Soc. Sec.,* 375 F.3d 387, 390 (6th

Cir. 2004).  Under the federal regulations at 20 C.F.R. § 404.1527(d)(2), the ALJ

is required to cite good reasons when rejecting the opinion of a treating source.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Among the

reasons cited by the ALJ for rejecting Dr. May's restrictions were that the

restrictions were inconsistent with the modest findings contained in the treatment

records from Bluegrass and that the restrictions were inconsistent with Rhorer's

testimony regarding his activities of daily living.  AR 35.  These reasons constitute

"good reasons." *Id.*

The Bluegrass treatment notes do not suggest the existence of such severe

mental limitations.  The notes show that in May 2006, while Rhorer's mood was

irritable and depressed, his presentation in the areas of general behavior,

appearance, affect, speech/thought and cognitive/perceptual abilities were within

normal limits.  AR 600.  Similar findings were made in August 2006, when Dr. May

completed his assessment.  AR 593, 595.  Even though Dr. May noted very severe

restrictions on Rhorer's ability to interact with others, Rhorer testified about his

excellent relations with supportive friends who took him in when he needed a place

to stay, provided him with amenities such as groceries and cigarettes and did his

laundry.  AR 2429, 2448, 2451.  Rhorer also testified that he could use a

computer to play games and email his brother despite his alleged problems with

simple instructions.  AR 2452-2453.

Rhorer further argues that even if the ALJ chose not to afford Dr. May's opinion controlling weight, he failed to properly evaluate the opinion under 20 C.F.R. § 404.1527(d), which requires consideration of the length of the treating relationship, the supportability of the opinion, the consistency of the opinion with the record, and specialization. However, the ALJ clearly found that the severe mental restrictions imposed by Dr. May were not consistent with the findings contained in the treatment records. And the ALJ noted that Dr. May treated Rhorer from only April 2006 until November 2006. AR 32. Thus, the ALJ met the required standard for evaluation of the opinion.

The ALJ also properly rejected the opinion of psychologist Christi Hundley and her associate, Jennifer Wilkes-Deaton. They examined Rhorer in July 2009 and diagnosed him with post-traumatic stress disorder, a panic disorder, a major depressive disorder, and mild mental retardation. AR 1632. They reported a marked restriction of ability to function in all areas, meaning "the ability to function is severely limited but not precluded." AR 1625-1626. The ALJ rejected this opinion because he perceived that the examiners relied too heavily upon Rhorer's subjective reports and because the findings were inconsistent with the Global Assessment of Functioning ("GAF") rating of 53, which would indicate the existence of only moderate impairment. AR 35.

The report of a psychologist should not be rejected simply because of the relative imprecision of the psychological methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic

techniques.  *Blankenship v. Bowen*,  874 F.2d 1116, 1121 (6th Cir. 1989).

Therefore, the ALJ's rejection of Hundley and Wilkes-Deaton's report for relying

too heavily on subjective factors may not pass muster.  However, a GAF of 53

indicates no more than moderate psychological symptoms, *see* American

Psychiatric Association*'s Diagnostic and Statistical Manual of Mental Disorders* (4th

Ed.--Text Revision), p. 34, and would be inconsistent with the severe mental

limitations identified by Hundley and Wilkes-Deaton.  Viewed in this light, the ALJ

properly rejected Hundley and Wilkes-Deaton's opinion, particularly because they

were not treating sources and thus were not entitled to the consideration due a

treating source under the federal regulations at § 404.1527(d)(2).  *Smith v.*

*Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  In this regard, the ALJ

did not err.

The ALJ also properly assessed the opinions of psychologist Timothy

Carbary and nurse-practitioner Connie McNeely.  After examining Rhorer in April

2005, Carbary diagnosed Rhorer with an adjustment disorder, an attention deficit

disorder, and borderline intellectual functioning.  AR 324.  However, he did not

identify the existence of more severe mental limitations than those found by the

ALJ.  AR 322-324.  Carbary noted a GAF rating of 59, which would suggest the

existence of only moderate mental restrictions, consistent with the findings of the

ALJ.  AR 324.  Carbary's opinion, therefore, does not support Rhorer's claim of

total disability.

Additionally, even though the ALJ incorrectly indicated that McNeely was a treating physician, *see* AR 34, he was warranted in his assessment of McNeely's opinion.  Rhorer argues that as a nurse-practitioner, McNeeley would not be an "acceptable medical source," and her opinion would be entitled to no weight.  20 C.F.R. § 404.1513.  But while information from "other sources" who are not "acceptable medical sources" cannot be used to establish the existence of a medically determinable impairment, it may provide insight into the severity of the impairment and how it affects the claimant's ability to function. SSR 06-3p.  The ALJ cited McNeely only for her observation that Rhorer was attentive and had good concentration.  AR 34.   McNeely had information about how Rhorer's mental impairment affected his ability to function, and the ALJ could rely upon this information.  Thus, the ALJ did not err.

Finally, the ALJ properly evaluated the credibility of Rhorer's subjective complaints.  The ALJ found that Rhorer's credibility was "poor at best," AR 34, citing Rhorer's ability to sit though the thirty-minute hearing without appearing in physical distress. *Id*.  Rhorer argues that this observation is factually untrue and is contradicted by the transcript of the hearing, which reveals he was standing for part of the hearing.  AR 2445.  However, Rhorer's reference is to the March 2007 hearing, and the record does not indicate that Rhorer was standing during the more recent January 2010 hearing.  AR 2465-2483.  Rhorer also asserts that this type of "sit and squirm" test has been soundly rejected. *Gafney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987).  But while the *Gafney* court ultimately rejected the sit-

and-squirm test, it also emphasized that the opportunity of an ALJ to observe a claimant's demeanor was invaluable and should not be discarded lightly. *Id*. (citing *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981)).

Here, the ALJ cited other reasons for his credibility ruling aside from his own observation. He noted that despite Rhorer's complaints of back and knee pain, the April 26, 2005, MRI scan revealed only mild facet arthritis of the lumbar spine, AR 34, 1165, and that Rhorer did not complain of knee pain at the most recent hearing. AR 34, 2465-2483. The ALJ also referred to other discrepancies in the record, including no indication of problems with ambulation or the need for an assistive device, AR 34; Rhorer's retained ability to carry out normal activities such as driving, shopping, and caring for his personal needs*,* despite his anxiety problems, AR 34, 2431, 2450-2451; and Dr. May's suspicion of drug-seeking behavior from Rhorer, AR 35, 590. Under these circumstances, the ALJ did not err in assessing Rhorer's credibility.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Rhorer's  motion for summary judgment, R. 12, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 13, is **GRANTED**.

8

The court will enter a separate judgment.

Signed on January 2, 2013

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY